ALEXANDER BARTOW, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Embezzlement — what justifies a conviction of, under chapter* 207 *of* 1874.

The plaintiff in error, Bartow, was the treasurer of the Fishkill Savings Institute, and also cashier of the National Bank of Fishkill, which latter bank received all deposits to be made in the Savings Institute, the business of the Institute being transacted at the office of the bank. February 1, 1877, Bartow, while starting for New York with $3,000 in bills belonging to the Bank, received $1,500 in bills belonging to the Savings Institute, both of which amounts, less five dollars, were deposited in a bank in New York to the credit of the Fishkill bank. The $1,500 was never credited in the books of the Fishkill bank to the Savings Institute, and on the books of the Fishkill bank the New York bank was charged with only $3,000 instead of with $4,495, the amount actually deposited. The whole sum deposited was thereafter drawn out by the Fishkill bank, which subsequently failed.

*Held,* that the plaintiff in error was properly convicted of embezzlement under chapter 207 of 1874.

WRIT of error to review the conviction of the plaintiff in error of embezzlement, and his sentence thereon.

*B. F. Tracy*, for the plaintiff in error.

*Wm. R. Woodin*, district-attorney, and *H. A. Nelson*, for the defendants in error.

GILBERT, J. :

Bartow, the plaintiff in error, has been convicted of embezzlement, and prosecutes a writ of error to reverse that conviction. There is no conflict in the evidence. The question is whether there was sufficient evidence to warrant that conviction.

He was the treasurer of a corporation known as the Fishkill Savings Institute, and also the cashier of an incorporated bank known as the National Bank of Fishkill. The office of the bank was also the office for transacting the business of, and for receiving moneys deposited in, the Savings Institute. All moneys of the Institute, before investment, were required to be deposited in the bank. On the 1st of February, 1877, Bartow received, on the street in Fishkill, just as he was starting for New York, a package containing $1,500 in bank bills belonging to the Savings Institute, which had been sent to him by McFowley, of Poughkeepsie, an attorney of the Savings Institute. The sum so received was never deposited in the National Bank of Fishkill, nor was the Savings Institute ever credited by the bank with that sum, or any part thereof, nor has it in any manner been applied to its use. The actual disposition of the money appears to have been this : Bartow proceeded to New York, having in his possession $3,000 in bank bills belonging to the National Bank of Fishkill, and the aforesaid sum of $1,500 belonging to the Savings Institute, and on the 2nd of February, 1877, he deposited both sums, lacking five dollars, to the credit of the National Bank of Fishkill in the Merchants' Exchange Bank of New York. The latter bank was the redeeming agent of the National Bank of Fishkill. The Merchants' Exchange Bank was charged on the books of the National Bank of Fishkill with only the sum of $3,000, instead of $4,495 actually deposited, and it appeared that the whole sum deposited was afterwards drawn out by the National Bank of Fishkill. Shortly afterwards that bank failed.

The statute under which the prisoner was indicted is an amendment of the Revised Statutes. (2 R. S., 678, § 59.) It provides that if any officer, etc., of a corporation converts to his own use, or, without the consent of his master or employer, takes, makes way with, or secretes with the intent to convert to his own use, or to the use of another, or withholds or appropriates, or otherwise fraudulently applies or makes use of any money, etc., belonging to another, and which may have come into his possession or under his care by virtue of such employment or office, he shall be adjudged guilty of embezzlement. (Laws of 1874, chap. 207.)

The meaning of this amendment is plain, and the intention of the Legislature in enacting it seems to me to be quite evident. By the Revised Statutes conversion to the use of the accused, or an intent to convert to his own use, was an essential ingredient of the crime. Under that definition of the crime breaches of trust of the most flagrant character, and which involved the moral guilt of embezzlement, escaped punishment. The amendatory act remedies that defect to a great extent, by making the intent to convert to the use of another, and the fraudulent withholding, or appropriation or application of money criminal. This was a step in advance, and it was not taken a moment too soon. The question which we have to decide is, whether the evidence is sufficient to warrant the conclusion that Bartow was guilty of the crime of fraudulently withholding from the Savings Institute, of which he was treasurer, the sum of $1,500 which has been mentioned, or of a fraudulent misapplication thereof. The argument that because he did, in effect, deliver the money to the National Bank of Fishkill, by depositing it to the credit of that bank in the Merchants' Exchange Bank, he did not withhold it from the Savings Institute is not destitute of plausibility. But the answer, as it seems to me, is that the very act relied on may have been a mere contrivance to withhold the money from the Savings Institute, and to make a fraudulent application of it to the National Bank of Fishkill. Having received the money there were only two ways by which Bartow could withhold it from the Savings Institute, namely, by crediting it to some other person or corporation, or by omitting to credit it altogether. If he adopted the latter course he would be exposed to immediate detection, unless

he also omitted to charge the money to the Merchants' Exchange Bank, for the reason that the charge against the Merchants' Exchange Bank would not be balanced by a corresponding credit. Hence it would be necessary to make no charge against the Merchants' Exchange Bank for that sum. Accordingly we find the remarkable coincidence occurring, of an omission to charge the Merchants' Exchange Bank and to credit the Savings Institute with the money deposited with the former. The money was appropriated to the use of the National Bank of Fishkill without any entry of the transaction on the books of that bank. An application of the money, to the use of the National Bank of Fishkill, would become the equivalent of a deposit thereof in that bank, only upon credit therefor being given to the depositor. Depositing in a bank *ex vi termini* means doing the act in the mode adopted by the bank for passing the sum deposited into the account of the depositor. It was the duty of Bartow to make the proper entries. No explanation of his omission to make them has been given. What is the just inference to be drawn from those facts? I think it is that the money was fraudulently withheld from the Savings Institute, and fraudulently appropriated to the use of the bank of Fishkill. The duty and obligation of that bank was that of a mere depository. The first act in the performance of that duty and obligation, after receiving the money, was to place the sum received to the credit of the Savings Institute. When that should be done the money would become the property of the bank. Until that was done, in some way, it remained the property of the Savings Institute. The delivery of the money to Bartow out of the bank worked no change in the title thereto for two reasons, first: Because such a delivery was not a delivery to the bank. Second. Because Bartow must be deemed to have received it in his capacity of treasurer of the Savings Institute. If the money had been lost, while Bartow was on his journey to New York, the loss would have fallen on the Savings Institute, and not upon the National Bank of Fishkill. While the money was in Bartow's possession, it was the property of the Savings Institute, upon the same principle that the money of a depositor continues to be his property until actually deposited in the bank. A levy under an attachment or execution against

the depositor while he was in the act of depositing the money, or before it had passed into the actual possession of the bank, would be valid and effectual. So in this case, the Savings Institute or its creditors might have caused the money to be seized at any time before Bartow deposited it in the Merchants' Exchange Bank. Up to that moment it continued to be the property of the Savings Institute. The same instant it ceased to be the property of the Savings Institute it became the property of the Merchants' Exchange Bank. It never became the property of the National Bank of Fishkill. That bank never had possession of the money, and it has been wholly lost to the Savings Institute. The deposit of it in the Merchants' Exchange Bank was nothing more than an appropriation of the property of the Savings Institute to the use of the National Bank of Fishkill. Such act of Bartow, coupled with an intentional omission on his part to give the Savings Institute credit for the money, constitutes in my judgment a fraudulent withholding of the money from the one, and a fraudulent misappropriation of it by the other.

Nor does the subsequent acknowledgment given by Bartow to Mr. Fowler, of the receipt of the money by the National Bank of Fishkill, relieve the transaction of its criminal character. On the contrary such acknowledgment, taken in connection with the suppression of the usual entries of the money received on the books of the bank to the debit of the Merchants' Exchange Bank, and to the credit of the Savings Institute, under the circumstances, is some evidence that the transaction was deliberately and intentionally screened for the fraudulent purpose of withholding and misappropriating the money of the Savings Institute. Even if the acknowledgment to Mr. Fowler should be sufficient to establish indirectly the liability of the National Bank of Fishkill for the money, it cannot be deemed an equivalent of a regular entry on the books of the bank. It was intended as a voucher to Mr. Fowler, and not the Savings Institute. Indeed the rule seems to be that the inference that a prisoner has embezzled property may be drawn from the fact that he has not accounted for it, or from the fact that he has falsely accounted for it. (Stevens' Dig. Criminal Law, 248.)

The acknowledgment to Fowler was not an accounting to the Savings Institute. It was the province of the jury to draw proper

inferences from the acts and conduct of Bartow, and I think that they did so.

I am of opinion that the conviction was just, and should be affirmed.

DYKMAN, J., concurred; BARNARD, P. J., not sitting.

Conviction affirmed.